IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SPERIDIAN TECHNOLOGIES, LLC,
a Delaware Limited Liability Company,

        Plaintiff,

v.                                                                                          CIV 15-0528 KBM/WPL

APPLICATIONS SOFTWARE TECHNOLOGY
CORPORATION, an Illinois Corporation,

        Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER came before the Court on the Motion to Dismiss, or Alternatively to Transfer *(Doc. 2)*, filed by Defendant Applications Software Technology Corporation ("AST").[1] Pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 73, the parties have consented to me serving as the presiding judge, conducting all proceedings, including trial, and entering final judgment. *See Docs. 8, 9 & 10*.

Defendant first moves the Court to dismiss this case pursuant to Rule 12(b)(2) asserting lack of personal jurisdiction. *See generally Doc. 2*. Defendant alternatively moves the Court to dismiss pursuant to Rule 12(b)(3) on the basis of improper venue or to transfer this case to the United States District Court for the District of Illinois. *Id.*

---

[1] As a preliminary matter, the Court notes that Defendant failed to comply with D.N.M.LR-Civ. 7.1(a) which requires the movant to "determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for concurrence may be summarily denied." *Id.* However, Plaintiff has not objected to Defendant's failure to comply and, instead, fully briefed the issue. In this case, denying the now fully-briefed motion serves no benefit for judicial economy. Under the circumstances, it is more appropriate that this Court admonish Defendant's counsel to request concurrence from opposing counsel before filing any motions in this Court, dispositive or otherwise.

1

Finally, if the other requested relief is denied, Defendant asks the Court to stay this case and to compel arbitration. *Id.* Having considered the briefs and evidence submitted by the parties, and the pertinent authorities, I find that the motion will be denied as to the relief sought pursuant to Rule 12. However, I will grant Defendant's Motion insofar as it requests that this case be stayed to permit arbitration.

## BACKGROUND[2]

### *Facts Relevant to Jurisdiction and Venue*

Plaintiff Speridian is "a technology company in the business of providing highly qualified technically skilled individuals to perform contract work[.]" *Doc. 2-4* at 2. Defendant's Regional Sales Director, Stacie Henn, contacted Plaintiff's employee, Scott Weiler, by e-mail on July 17, 2014. *Doc. 13-1* at 1, 7. Defendant's email proposed "an exclusive partnership" to complete work on a software upgrade for the government of the District of Columbia. *Id.*

On September 14, 2014, Plaintiff and Defendant entered into a "Subcontractor Agreement" ("the agreement"). *Doc. 1-1* at 11-16. The agreement is governed by Illinois law and was signed by Plaintiff's Managing Partner, KP Hari, and Defendant's COO, Anthony Catalano. *Id.* at 15-16. It provides, *inter alia*, that for a certain time span, neither party was to "directly or indirectly solicit" each other's employees to seek employment. *Id.* at 11. Speridian asserts that AST breached this agreement and committed associated torts by soliciting and hiring its employee, Venkat Iyer ("Iyer"). *Id.* at 3. Defendant later terminated the agreement in March, 2015. *Id.*

---

[2] All facts stated herein are presented in the light most favorable to Plaintiff. *See generally Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

2

Iyer was employed by Plaintiff as a "Senior Principal and Business Architect." *Doc. 2-3* at 1. At all relevant times, Iyer was stationed at Plaintiff's regional office in Rockville, Maryland*. Id.* Although he never visited or worked in New Mexico while employed by Plaintiff, Iyer waived his right to contest personal jurisdiction in New Mexico in his employment contract with Speridian.[3] *Doc. 2-4* at 12. At some point, Defendant's agent solicited Iyer during a "casual conversation" over lunch*. Doc. 13-1* at 12.[4] Ultimately, Iyer resigned his position with Speridian effective March 6, 2015. *Id.* at 2. Iyer then took up residence in Arizona and commenced working for Defendant AST. *Id.* Three days after the resignation date, Plaintiff became aware of Iyer's employment with Defendant. *Id.*

Speridian then filed a lawsuit against Iyer in New Mexico state district court alleging, among other things, that Iyer had thereby breached a restrictive covenant in his employment contract with Speridian. *See Doc. 2-4* (Verified Complaint in *Speridian v. Iyer*, D-202-cv-2015-02578). In that litigation, Defendant's Chief Operations Officer Anthony Catalano (who signed the Subcontractor Agreement), submitted an affidavit on April 7, 2015 and traveled to Albuquerque to provide live testimony in support of Iyer. He also participated in a three-way mediation here in Albuquerque between AST, Speridian and Iyer that took place on April 10, 2015. *Doc. 1-1* at 7. At all times, Catalano was represented by counsel. *Id.* Ultimately, Speridian settled its claims against

---

[3] The sub-contractor agreement entered into between Plaintiff Speridian and Defendant AST, however, contains no such waiver provision. *Doc. 1-1* at 15.

[4] The parties provide no information as to where the alleged solicitation occurred. However, because Iyer provided sworn testimony that he had never visited New Mexico prior to the state court litigation, the Court will assume that any alleged acts of solicitation occurred outside of this state.

Iyer, who resigned his position with Defendant on April 22, 2015. *Doc. 2-1* at 2. However, Speridian was unable to reach a resolution with Defendant AST. Thus, Plaintiff initiated this suit. *Doc. 13-1* at 4.

### *The Arbitration Term in the Agreement's Arbitration Provision*

There is one final wrinkle to Defendant's Motion – the validity of the arbitration clause of the parties' Subcontractor Agreement. Section 13(d) of that agreement states:

> *Problem Resolution:* In the event of problems that may occur, the parties hereto agree they will attempt to resolve them. If their designated representative cannot, an officer of each party will assist in the resolution. If the problem cannot be solved, the issue shall be resolved by binding arbitration.

*Doc. 1-1* at 15. The parties dispute the impact of this provision and the measures that they undertook to engage in a meaningful attempt towards arbitration. Plaintiff contends that the arbitration provision is a nullity because the parties were unable to agree on an arbitrator or a process for choosing one, and that the incorporated choice of Illinois law mandates that result. *Doc. 13* at 17-24. Defendant, on the other hand, argues that if state law should render the agreement to arbitrate void, it is preempted by the Federal Arbitration Act ("FAA"). *Doc. 2* at 14-17; *Doc.16* at 11-12.

## **ANALYSIS**

## I. PERSONAL JURISDICTION OVER DEFENDANT AST

Defendant argues that its ties and relevant conduct are insufficient to trigger this Court's personal jurisdiction over it here in New Mexico. The Court disagrees. When the factual underpinnings of Plaintiff's Complaint are viewed as a whole,[5] Defendant's actions satisfy the minimum contacts requirement of due process.

---

[5] Plaintiff brings six claims in this case: Count I – Breach of Contract; Count II – Violation of the Uniform Trade Secrets Act; Count III – Intentional Interference with Contractual Relations;

4

### A. Legal Standard

"The plaintiff carries the burden of showing the propriety of the court's exercise of personal jurisdiction over a defendant." *Buckhannon v. Monarch Life Ins. Co.,* 46 F.3d 1150 (10th Cir. 1995) (citation omitted). However, when the issue is raised by vehicle of a motion to dismiss, this burden is a low one: "[i]f the question of personal jurisdiction is considered prior to trial and on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing." *Id.* (internal quotation marks and quoted authority omitted); *accord Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014).

> The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits . . . If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.

*Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (internal quotation marks and quoted authority omitted).

This Court may exercise jurisdiction if it maintains general or specific personal jurisdiction over the non-resident Defendant. General jurisdiction arises where a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746,

---

Count IV -- Intentional Interference with Prospective Contractual Relations; Count V – Breach of the Covenant of Good Faith and Fair Dealing; and Count VI – which seeks Injunctive Relief. The parties' analysis appears tailored toward and focused upon Count IV. *Doc. 1-1* at 6-7. In that claim, Plaintiff asserts that Defendant's conduct in April, 2015, namely, Catalano's involvement in the Iyer litigation, was tortious under the "continuing tort" doctrine. *See generally Doc. 13*. Yet this claim would not exist absent the contract between the parties -- Catalano would have had no reason to travel to New Mexico and participate in the *Iyer* litigation. The Court will, therefore, address the issues raised by Defendant's Motion by reference to Plaintiff's Complaint as a whole.

754 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). Specific jurisdiction, on the other hand, "'focuses on the relationship among the defendant, the forum, and the litigation'" rather than "the defendant's contacts with persons who reside there." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). Plaintiff concedes that general jurisdiction does not apply to Defendant, and instead asserts that it has made the requisite showing to support specific personal jurisdiction over Defendant AST. *See Doc. 13* at 2.

### B. New Mexico's Long-Arm Statute and Due Process Analysis

Pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), in a diversity action this Court turns to New Mexico's long-arm statute, codified at NMSA 1978, § 38-1-16 (1971), to determine the propriety of exercising jurisdiction. New Mexico courts, however, have held that the statute is "coextensive with constitutional limitations imposed by the Due Process Clause. . . . Thus, if jurisdiction is consistent with the Due Process Clause, then New Mexico's long-arm statute authorizes jurisdiction over a nonresident defendant." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (citing *Tercero v. Roman Catholic Diocese*, 132 N.M. 312 (2002)); *see also Zavala v. El Paso County Hosp. Dist.*, 2007-NMCA-149, ¶ 10, 172 P.3d 173, 178 ("Although our long-arm statute enumerates acts that may subject non-resident defendants to personal jurisdiction in New Mexico, the necessity of a technical determination of whether a defendant committed such an act has been removed.").

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain

minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Burnham v. Superior Court of California, County of Marin*, 495 U.S. 604, 618 (1990) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121.

### (1) Minimum Contacts Analysis

The Tenth Circuit has recently distinguished the standards that apply in determining the propriety of exercising personal jurisdiction depending on whether a plaintiff's claim sounds in tort or contract. *See Niemi*, 770 F.3d at 1348.[6] These standards are respectively referred to as "purposeful availment" where a suit sounds in contract and "purposeful direction" in tort cases. *Id*. Despite this distinction, in practice, the lines between these tests are somewhat blurred. *See, e.g., id.* at 1218-1220. Indeed, this case is a prime example of why these lines are blurred.

Here, Speridian asserts both tort and contract claims; yet there would be no relationship between the parties to give rise to either category of claims but for the Subcontractor Agreement. As set forth below, the Court need not analyze whether the "purposeful availment" contract analysis is met because the "purposeful direction" tort

---

[6] The Supreme Court drew no such distinction in *Walden* and references contract-based precedent in setting forth the minimum contacts standard to be applied in that case (a *Bivens* action alleging Fourth Amendment violations). *See Walden*, 134 S. Ct. at 1122. However, *Walden* was decided on February 25, 2014, whereas the Tenth Circuit decided *Niemi* later on November 4, 2014. The Court will therefore defer to the *Niemi* Court's framing of the issue for two reasons. First, the *Niemi* analysis is not inconsistent with the Supreme Court's formulation of the test in *Walden*, and in fact itself blends the two standards in its application. Both cases alleged tortious conduct and, yet both rely in part on the "purposeful availment" standard. Second, the *Niemi* analysis is useful in this case as it examines Colorado's long arm statute, which also "collapses" into due process. *Niemi*, 770 F.3d at 1348.

standard is clearly satisfied thereby supporting the exercise of personal jurisdiction over Defendant AST.

"'[P]urposeful direction' has three elements: (a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state." *Niemi*, 770 F.3d at 1348 (quoting *Newsome v. Gallacher*, 722 F.3d 1257, 1264–65 (10th Cir. 2013)).[7] Here, Defendant AST's actions, through its COO, Mr. Catalano, were definitely intentional – Defendant purposefully reached out to Speridian, which resides in New Mexico, in forming the contractual relationship at issue and by intentionally entering the state in an attempt to avail itself of the laws of New Mexico during the course of the *Iyer* litigation.

These actions, specifically Catalano's participation in the *Iyer* litigation, also show that Defendant's acts were expressly aimed at New Mexico. At this stage the Court accepts as true Plaintiff's allegation that Defendant only participated in the *Iyer* litigation in furtherance of its attempts to retain Mr. Iyer as an employee. In this light, Plaintiff's argument in favor of jurisdiction is compelling. Defendant was not required to appear in New Mexico state court as it was neither subject to the court's subpoena power nor a party to that lawsuit. Yet, Defendant willingly entered the state to participate in the *Iyer* litigation. While not dispositive, "physical entry into the State – either by the defendant in person or through an agent, goods, mail, or some other means – is certainly a relevant contact" when examining the "minimum contacts" arising from alleged tortious activity. *Walden*, 134 S. Ct. at 1122 (citations omitted); *see also Rusakiewicz v. Lowe*, 556 F.3d

---

[7] For contractual claims, "[p]urposeful availment" requires a plaintiff to prove: (1) the defendant purposefully directed its activities at the residents of the forum state, and (2) the litigation "results from alleged injuries that arise out of or relate to those activities." *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005) (citation omitted).

1095, 1101-02 (10th Cir. 2009) (in context of non-resident defendants who allegedly authorized and encouraged litigation of a defamation suit, the court found that "those who support and authorize funding of intentional tortious conduct must be subject to personal jurisdiction in the state where the tort took place and where they committed the acts that supported the tort.").

Finally, Plaintiff would have suffered no injury but for Defendant's participation in the state court litigation in an alleged attempt to retain Iyer as an employee and thereby "exploit the Trade Secrets that Mr. Iyer possessed." *Doc. 1-1* at 7. Defendant AST must have been aware that the "brunt" of Speridian's alleged injuries stemming from its contractual relationship with AST and AST's alleged tortious conduct against it would be felt here in New Mexico where Speridian is domiciled. Thus, the three elements of "purposeful direction" are met and support the exercise of personal jurisdiction.

### *(2) Subjecting Defendant to Litigation in this Forum will not Offend Traditional Notions of Fair Play and Substantial Justice*

Finally, and perhaps most importantly, Defendant was on notice that it might be haled into court in New Mexico. If minimum contacts are found, as in this case, then "the burden is on the defendant to 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable'" and, indeed, "[s]uch cases are rare." *Rusakiewicz*, 556 F.3d at 1102 (quoting *Burger King*, 471 U.S. at 477). In determining whether a court's exercise of personal jurisdiction is "reasonable" in light of the circumstances surrounding the case, courts look to the following factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies,

9

>and (5) the shared interest of the several states in furthering fundamental social policies.

*Trujillo*, 465 F.3d at 1221. These factors weigh in Plaintiff's favor.

First, it will obviously be burdensome to some degree for Defendant to litigate claims in New Mexico. "At the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980). This Court accepts only electronic filings in civil matters and regularly holds status conferences telephonically. Similarly, there is little need to ship documents or require travel of the parties or witnesses, as depositions and other discovery matters can be held via teleconference, or resolved by other electronic means.  Finally, Defendant's act of entering into the state to participate in the *Iyer* litigation detracts from its plea that litigating in New Mexico would be unfairly burdensome.

Second, New Mexico has an interest in resolving this litigation because at least some of the injury of which Plaintiff complains occurred in the state. *See Zavala*, 2007-NMCA-149, ¶ 31. In *Zavala*, the alleged tortious conduct (medical malpractice) occurred in Texas. *Id.* In contrast, Mr. Catalano's actions, which Plaintiff argues were tortious, occurred in New Mexico. While the *contract* between Plaintiff and Defendant must be construed in accord with Illinois law, *Doc. 1-1* at 15, New Mexico courts have an interest in the evolution of novel *tort* claims such as are alleged here.[8] This matters to the fairness analysis because it is New Mexico that has an interest in resolving whether

---

[8] Defendant argues that the law of Illinois or Maryland applies to Plaintiff's state law torts. This argument is unconvincing for two reasons. First, as Defendant admits, the merits and viability of Plaintiff's claim are not at issue at this juncture. *Doc. 16* at 6, n. 3. Second, the Tenth Circuit defers to the forum state in determining the merits of tortious conduct alleged to have occurred there. *See Rusakiewicz,* 556 F.3d at 1103.

conduct undertaken in litigation is tortious. *See Rusakiewicz*, 556 F.3d at 1103 ("It is scarcely unfair to make those who have initiated a lawsuit in a particular state undergo suit in that state to determine whether the lawsuit was tortious."); *see, e.g., Valles v. Silverman*, 2004-NMCA-019, 135 N.M. 91, 84 P.3d 1056 (holding "active participation" in litigation supports an abuse of process claim under New Mexico law).

Third, Plaintiff has an interest in receiving convenient and effective relief in this matter. The disputes in this case center on Defendant's alleged infringement of an employment contract between Plaintiff and Iyer, and that employment contract bound him to suit in New Mexico. It is reasonable to assume on this basis that Plaintiff handles all personnel matters through its corporate office in New Mexico. Requiring Plaintiff to travel to another jurisdiction to prove claims arising out of a relationship with its employee is at best inequitable.

Finally, it is in the best interest of the several states that are implicated in this matter and judicial efficiency, generally, to resolve this case in New Mexico. Defendant argues that the contract at issue in this case must be resolved by reference to Illinois law. While this may be true, it matters little in this diversity action. The Court will necessarily be required to engage in a choice of law analysis, familiarize itself with pertinent law, and render a decision in accord therewith. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 70 (1938). This process is not unique to this Court – *any* federal court would be required to do the same. Transferring this case to another district would only unnecessarily delay its ultimate resolution.

In sum, Defendant has sufficient minimum contacts with New Mexico, and three of the five fairness factors weigh in Plaintiff's favor while the remaining two favor neither

11

party. Therefore, the Court finds that the exercise of jurisdiction in this forum will not offend due process and will promote the "just, speedy, and inexpensive determination" of this case. FED. R. CIV. P. 1.

## II. VENUE IS PROPER IN THIS DISTRICT

The parties give short shrift to the venue issue, primarily relying on persuasive authority. However, the Supreme Court recently addressed the issue in *Atlantic Marine Const. Co., Inc. v. U.S. District Court for Western District of Texas*, 134 S. Ct. 568, 577 (2013), and clarified the standard to be applied. As stated by the Court:

> Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Rule 12(b)(3) states that a party may move to dismiss a case for "improper venue." These provisions therefore authorize dismissal only when venue is "wrong" or "improper" in the forum in which it was brought.
>
> This question—whether venue is "wrong" or "improper"—is generally governed by 28 U.S.C. § 1391 (2006 ed., Supp. V). That provision states that "[e]xcept as otherwise provided by *law* . . . this section *shall* govern the venue of *all civil actions* brought in district courts of the United States." § 1391(a)(1) (emphasis added). It further provides that "[a] civil action may be brought in – (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." § 1391(b). When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a).

*Id.* (footnotes omitted). The application of the *Atlantic Marine* analysis to this case is straightforward. Given the Court's ruling on personal jurisdiction, two provisions of 28 U.S.C. § 1391 are implicated here.

First, although Section 1391(b)(1) requires that the defendant "reside" in the applicable judicial district, Section 1391further provides that as to "Residency – For all venue purposes – (2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in *any* judicial district in which such defendant is subject to the court's personal jurisdiction[.]" 28 U.S.C. § 1391(c)(2) (emphasis added). Because Defendant is subject to personal jurisdiction in this district as to the claims in this lawsuit, Defendant therefore satisfies the residency requirement for this state and is subject to suit in this venue pursuant to Section 1391(b)(1).

Second, and perhaps more apt, is Section 1391(b)(2) which requires that "a substantial part of the events or omissions giving rise to the claim occu[r]" in the district. Plaintiff's claims, specifically Count IV, are clearly directed, at least in part, at the intentional actions of Mr. Catalano during the *Iyer* state litigation.

The Court also finds that transfer pursuant to 28 U.S.C. Section 1404(a) would be inappropriate. Under that Section, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C.A. § 1404(a). At best, there is a dispute as to whether transferring this case is in the best interest of the parties and witnesses. Plaintiff obviously resides in New Mexico and, as Plaintiff points out, the pivotal witness

in this case – Mr. Iyer – resides in Arizona, which is much closer to New Mexico than Illinois. While it is true that Defendant and its witnesses may reside in Illinois, other pertinent witnesses may also be present in Maryland or the District of Columbia. On balance, these considerations favor retention of this case by this Court.

### III. THE COURT WILL STAY THIS MATTER IN FAVOR OF ARBITRATION

There is little question that the Federal Arbitration Act (hereafter "FAA") applies to the contract at issue because of its interstate commerce character. The parties dispute, however, if it compels arbitration in this case.

The Court therefore looks to several of its provisions for guidance. First, Section 2 of the Act states:

> [a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Clearly, the parties contemplated resolving any disputes by arbitration as that was an express term of the contract. *See supra* at 4 ("If the problem cannot be solved, the issue shall be resolved by binding arbitration."). Indeed, Speridian confirmed that expectation when it initially served a demand for arbitration on AST on April 2, 2015. *See Doc.* 2 at 17. Put simply, Section 2 of the FAA requires enforcement of this agreement to arbitrate unless there are grounds for its revocation.

Second, Defendant AST has clearly complied with Section 3 of the Act in moving to compel arbitration as:

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an

> agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. As Defendant has consistently sought to proceed to arbitration and is therefore not in default, it is obviously its prerogative to move to compel arbitration, and the Court has little to no discretion under Section 3 to deny such a request.

Finally, this Court is not persuaded that the parties' agreement to have Illinois state law govern the contract invalidates the enforceability of the arbitration provision. True, the parties ultimately failed to agree on an arbitrator. Under Section 3 of the Illinois Uniform Arbitration Act (hereinafter "IUAA"), "If the method of appointment of arbitrators is not specified in the agreement and cannot be agreed upon by the parties, the entire arbitration agreement shall terminate." Plaintiff contends that this is precisely what happened here such the arbitration term of the contract cannot be enforced.

Plaintiff relies on *Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468 (1989). The *Volt* court stated that

> [a]rbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which that arbitration will be conducted. Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward. By permitting the courts to "rigorously enforce" such agreements according to their terms, we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind by the FAA.

15

*Id.* at 479 (citations omitted). In *Volt*, the Supreme Court declined to find that the California "Court of Appeal erred in interpreting the choice-of-law clause to mean that the parties had incorporated the California rules of arbitration into their arbitration agreement [because] the interpretation of private contracts is ordinarily a question of state law, which this Court does not sit to review." *Id.* at 474.

A later decision of the Supreme Court limits the *Volt* holding as to the effect of a choice-of-law provision on the application of a state's procedural arbitration rules. Again, in *Volt* the Supreme Court felt constrained by the state court's finding to conclude that the parties intended to incorporate both the substantive and procedural laws of California. In the more recent case, where the contract did not expressly indicate whether the state's arbitration procedural law was also meant to be incorporated, the Court found that it was not:

> We think the best way to harmonize the choice-of-law provision with the arbitration provision is to read "the laws of the State of New York" to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators. Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other.

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63-64 (1995).[9] Here, even the parties' later recitations that the IUAA applied to the arbitration provision does not change the fact that their contract does not expressly indicate one way or the other whether, at the time they executed the contract, they intended to incorporate Illinois

---

[9] As Justice Thomas observed in his dissent, the *Mastrobuono* court disregarded *Volt's* "reject[ion] of the argument that that the choice-of-law clause was to be construed as incorporating only substantive law. . . ." *Id.* at 65 (Thomas, J., dissenting).

arbitration law. Pursuant to *Mastrobuono*, then, only Illinois substantive law governs the contract, and it does not affect the enforceability of the arbitration provision.

Yet even if the choice-of-law provision incorporated Illinois procedural law, to the extent that it conflicts with the FAA, it is preempted. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011);[10] *see also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (holding that "[c]ourts may not, however, invalidate arbitration agreements under state laws applicable only to arbitration provisions" and clarifying that in *Volt* the statute "determined only the efficient order of proceedings; it did not affect the enforceability of the arbitration agreement itself").

Finally, Plaintiff argues that Defendant AST has "waived its right to argue that the FAA governs this case." *Doc. 13* at 18. However, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself **or an allegation of waiver, delay, or a like defense to arbitrability**." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25 (1983). In other words, informal agreements to adhere to state law arbitration rules cannot constitute a waiver of the right to proceed under the FAA if the issue is later raised in a judicial proceeding.

---

[10] *AT&T Mobility* states that "[a]lthough § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." (citations omitted); *see id.* ("[O]ur cases place it beyond dispute that the FAA was designed to promote arbitration. They have repeatedly described the Act as embodying a national policy favoring arbitration . . . and "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary[.]"); *see, e.g. id.* (holding that the FAA preempted California's judicial rule regarding the unconscionability of class arbitration waivers in consumer contracts); *see also Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201 (2012) (holding that West Virginia's prohibition against pre-dispute agreements to arbitrate personal injury or wrongful death claims was preempted by the FAA).

Having determined that the agreement to arbitrate is enforceable, the Court now turns to how that can be accomplished. Fortunately, Section 5 of the FAA specifically provides a mechanism to secure arbitration when, as here, parties have agreed to proceed to arbitration but are unable to agree on an arbitrator:

> [i]f in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy **the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator**.

9 U.S.C. § 5 (emphasis added). The parties should be given one last opportunity to agree upon an arbitrator. If they are unsuccessful, the Court will select and appoint one to conduct the arbitration proceeding.

## CONCLUSION

Defendant subjected itself to the jurisdiction of this Court by engaging in a contractual relationship with Plaintiff, a New Mexico resident, and by committing allegedly tortious acts during the course of judicial proceedings in New Mexico. Further, Defendant has not shown entitlement to transfer this matter to another judicial district. However, the parties' agreement to arbitrate their dispute is valid and must be enforced in accord with the FAA.

Wherefore,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, or Alternatively to Transfer *(Doc. 2)*, is **granted in part and denied in part**. The Court will stay

proceedings in this case until arbitration has been had in accordance with the terms of the agreement. If the parties have not agreed upon an arbitrator and filed a notice to that effect by October 26, 2015, then this Court will appoint one in accordance with 9 U.S.C. § 5. In all other respects, the motion is **denied**.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent